Good morning, your honors, and may it please the court. I'm James K. Cameron, and I'm here, it's a privilege to be here with my co-counsel Tim Tuohy, on behalf of the appellants, there are three, the estate of Richard C. Corrales, its executive Sandra Favila, in her personal capacity, and Motion Graphics, Incorporated. We stand here because on the eve of trial in the district court, something went tragically wrong. In a case that had been litigated in good faith for nearly two years, was ready for trial. The consequence of that decision was to deprive my clients of their right to a jury trial, and their due process rights were violated. Just one housekeeping matter, I'm, with the court's permission, reserving three minutes of my time for rebuttal. Depending on the court's questions, I'll yield two or three of my minutes to Mr. Tuohy, who's here to address the substantive copyright infringement issues that are part of this appeal. We have a The two decisions that are before the court today are extraordinary and indeed unprecedented. The July 23, 2015 dismissal order, upon which the later attorneys fee decision relies, through the rule book out, along with the luminous binding precedent from this very court. It occurred just six weeks before trial, at the end of two years of litigation. The priority of which was already confirmed in a well-reasoned 20 page decision by the original district judge. The decision to dismiss relied upon cooked up evidence, which was far outside the pleadings, even though it was technically a motion to dismiss under 12b-6. That evidence was never produced during discovery, and it was contradicted directly by admissions of those parties and sworn testimony from those same parties. Because the court completely failed to observe the requirements of rule 12b-6, 12d, and rule 56, my clients were deprived of the right to a jury trial, and basic due process rights were violated. The 12b-6 violations occurred in three separate ways. First of all, it's very clear from the decision that the district court relied upon evidence outside the pleadings in order to conclude that the second amended counterclaim failed to state a claim for copyright infringement. The pleading by itself makes no reference to any co-ownership. It doesn't have to, which leads me to the second point, which is that co-ownership is required as an affirmative defense, and it's not pleaded by any of the counter defendants in any of their answers. So the only way the court gets to this is to look to matters outside the pleadings, namely this cooked-up evidence that materialized in May of 2015, months after discovery was cut off, long after there was any opportunity for cross-examination. And based on that cooked-up evidence, the court decided to dismiss under rule 12b-6. It certainly wasn't amenable to judicial notice, so how else do you get there? And those documents, which didn't even exist until May of 2015, certainly weren't attached to the counterclaim. So you violate all the rules in all the cases about what is permissible under 12b-6. If the court is going to rely on evidence outside the pleadings, it must give notice under rule 12d that it is converting it to a summary judgment motion. The court did not give that notice. It failed. That notice is required if the court is presented with evidence outside the pleadings and does not exclude it. That's the language of 12d. Kennedy, isn't there an exception for judicially noticeable  Yes, but these weren't, Your Honor, with respect. These clearly were not. No, we cite the cases about judicial notice. These were not judicially noticeable documents. They were attached to a declaration that appeared for the first time in a motion for summary judgment, months after discovery cutoff. There's no judicial notice applicable here. And they weren't attached to my client's counterclaim. So you have a failure to give a 12d notice, which was required because of what the court did, and then it doesn't comply with the requirement further in 12d that the court then considered all relevant evidence. Well, we asked for the opportunity to present contrary evidence and to have an evidentiary hearing so that we could cross-examine this declarant about this new evidence, and the court refused to give us that opportunity. What happened, in fact, was that the court de facto gave the counter defendants leave to amend their answers to the counterclaim, even though they didn't ask to do it. We asked for the right to amend our counterclaim. The court refused that. The court failed to give the 12d notice. It failed to comply with the requirements that it consider all relevant evidence, and it deprived us of an opportunity to cross-examine the declarant and the other parties long after discovery had concluded on a matter that never should have come up. It should never have been considered by the court in the first place. So the appellees argue in one of their briefs, it's the Joel Parties brief, that what really happened here was the court dismissed for lack of subject matter jurisdiction under 12b1 and 12h3. Well, first of all, that isn't what the order says. And second of all, it cannot have, it could not have done that even if it wanted to. Even if you dismiss the copyright claim, you still have original federal jurisdiction over the federal trademark claims, the federal Lanham Act claims. And Judge Lew had already written his opinion back in late 2015, affirming the propriety of jurisdiction. So there was still federal jurisdiction, but what the trial court did here was say, well, I don't think there's a copyright claim because I'm looking at stuff way outside the record to say it doesn't state a claim for relief. So I'm sending the rest of it back to the Superior Court. Now, when you look at what the reason that subject matter jurisdiction could not have been the basis for this is that when you have subject matter jurisdiction's basis on the one hand and the substance of the claim completely intertwined, you have to allow the trier of fact a trial to make the determination. And that's this Court's safe air for everyone case, which we cite in our reply brief at pages 8 and 9. It's 373, Fed 3rd, 1035 at page 1039. It couldn't have done that, but it didn't do it anyway. It says it didn't. Well, then you get to the substantive arguments. Even if you get past all this stuff, say this was really a summary judgment motion, we'll ignore the fact that it wasn't properly presented. Was there a basis for doing so? No, there wasn't. And the first major mistake the Court made was to look at the underlying decisions of the Superior Souther, a now fully determined and adjudged with finality thief and liar in that case, saying that that case with the two appellate decisions gave him ownership of 49% of the property that he stole. Now, that is a perversion of justice to say that a stole, particularly to people who are very well aware of the fact of the theft or were already parties to the underlying litigation. The basis for this is a complete misconstruction of the two appellate decisions in Corrales v. Souther. And those decisions do not change one finding of the original Superior Court, which found him guilty of fraud, conversion, breach of fiduciary duty, and breach of contract, and awarded over $2 million in punitive damages, as well as compensatory damages, prejudgment interest, etc. The only reason for the appeal was the selection of remedies issue and the fact that the Superior Court had granted a constructive trust in addition to compensatory damages. A constructive trust is an equitable remedy for fraud, which had been found. And the only refinement that takes place in those two orders, and I was there, I was lead counsel on both appeals. I know of what I speak. The issue was whether there was a duplication in the compensatory damages on the one hand, and the imposition of the constructive trust. Okay? And by the time you get to the end of the second of those, you've got a properly fashioned decision. Okay? Just very finally, so the idea that Mr. Souther, as a shareholder, owns 49 percent of the assets of the corporation, makes an abomination of California law and the law of every state. He doesn't have any right into the property. And God knows those decisions don't give it to him, because they say and affirm that he was a thief and he stole the stuff. So you have a thief trying to convey it to his wife, their second generation fraudulent transferee, to say, oh, now we have co-owners of intellectual property. And guess what? All during discovery, all Mr. Souther, Ms. Pascrella testified, and what they admitted in the month of April 2015, in their opposition to the summary judgment motion, was they didn't own any of it. So conveniently, in order to defeat discovery, in order to defeat our having a claim, they concoct this evidence, which is a complete 180 from their entire position. This case is just like the Second Circuit case of Davis versus Blige, which we provided to the court in our supplemental letter. You can't concoct evidence of co-ownership after the fact to defeat a claim for copyright infringement. And that's exactly what these people did. And this court should not condone it. What Mr. Souther did was to continue to from the decisions in Corrales versus Souther, and none of these people have rights to anything. He never had it in the first place. As a shareholder, he didn't have it. The court found that he stole it, and now he's trying to convey it to other people to give them ownership rights. Just one final point on the attorney's fees, and then I'm going to turn this over to Mr. Toohey. On the attorney's fees, this is a prevailing party statute. If you reverse here on the merits, you reverse the attorney's fees. There's no other basis for the attorney's fees. The Joel parties concede that. Okay? That's easy. But what's more remarkable is that they're a quote-unquote prevailing party, even though it wasn't their motion. This is the court's own motion, but they still get awarded attorney's fees as a prevailing party. What's interesting beyond that is that their motion for summary judgment was pending, and the we don't know how they're a prevailing party, even if there's somehow an affirmance here, but if you reverse, there's no longer a prevailing party. There's no basis for attorney's fees in any amount. With that, I'd like to turn the podium over to Mr. Toohey. You only have two minutes left, but, uh, well, that's total time. I'm sorry. I'll reserve it for rebuttal. Thank you. I misunderstood that the clock had been reset accordingly. My apologies. Good morning, Your Honors. May it please the court. I'm delighted to be joined today by Messiah McDougall, who assisted us on the brief and is licensed to practice before this court. I'm proud to be able to speak on behalf of him, my clients, in this case. To address the points that were raised in oral argument, point number one, this is somehow cooked-up evidence and that the whole thing needs to be reversed because in a footnote, in a portion of a footnote, Judge Otero, in what can best be understood as a make-weight argument, said, well, the allegations in the SAC, second amended counterclaim, are borne out by the fact that I had in front of me a memorandum of transfer executed by Mr. Souther, granting a non-exclusive license, confirming the grant of a non-exclusive license to his wife, to her company, to my clients, Mr. Thomas Joel, Joel Media Corporation, to utilize only his portion, not a hundred percent, only his portion, forty-nine percent, of the If Judge Otero was wrong in considering that, and for all the reasons stated in our brief, we don't think he was, this was a case that was voluminously briefed. There were a hundred and twenty-one exhibits, multiple declarations, existing prior to our raising the jurisdiction failure to state a copyright claim in our reply brief on our summary judgment motion. After that, Judge Otero issues an order to show cause. The Corrales parties submit multiple additional declarations. They submit twenty-one new exhibits in response to that. They submit additional evidence objecting to Mr. Souther's response to the order to show cause, and the issue of the memorandum of transfer. All of that is in relevance to the right result in this case, because that particular piece of evidence, if it is completely ignored, which the Corrales parties could not hope for a better result after any sort of evidentiary hearing, that the district court completely ignores that memorandum of transfer, that does not get them around the allegations in their second amended counterclaim that the website, the intellectual property, the copyrights were transferred by my client to a new website owned by Mr. Souther's wife, by her company, at Mr. Souther's express direction as the owner of Get Disputing that in their reply brief in this case, pages 11 and 14, they reiterate the point that was made in oral argument, well Mr. Souther stole all this stuff, he took all this stuff, he personally had it, and then he transferred it to the knowing recipients, the wife's company, Mr. Joel's company. The attempt by the appellants to distinguish between the findings of fraud, theft, punitive damages, and the actual holding of the court of appeal that Mr. Souther took assets in which he owned 49%, in so doing he worked a corporate dissolution. As the first appellate order said, he can't steal 100% when he owns 49%, so you only get, you the estate of Corrales, only get 51% of these assets. They said it in the first appellate order. By the time the second appeal came around, Mr. Cameron, who as he says was lead counsel in both appeals, conceded at oral argument in front of the California Court of Appeal, as he had to, that 51% was all the estate could get. Whether Mr. Souther is a thief, whether Mr. Souther took all this stuff is irrelevant. A court of co-equal dignity to this court, the California Court of Appeal, has rendered not once but twice a final unappealed judgment saying sure, he stole it, he took it, we agree, but 49% of what he stole belongs to him and you, the estate of Corrales, don't get any more than 51%. It's somewhat ironic that that issue was so obvious in front of the California Court of Appeal that the estate conceded it, but they now argue that it's a perversion of justice for the same result to be given respect and dignity in this court. Our position, I think, is no stretch of fact or law in this case. You don't need a memorandum of transfer to confirm the judicially obvious. The Court of Appeal decided the issue, Mr. Souther's opinion about what the Court of Appeal did, Mr. Cameron's opinion, my opinion, doesn't matter. I have clients who think the income tax is unconstitutional and I give them all the same advice. When the IRS comes calling, make sure you know how to do this. It is constitutional because the Supreme Court said so. We have a final decision, the Court of Appeal decided it. People's opinions as to that opinion, frankly, are irrelevant. Point number two, no affirmative defense was ever raised by any party as to the license and the co-ownership issue. That just simply isn't the case. We have cited the court in our brief to our affirmative defenses brought on behalf of the Joel parties 1, 4, and 6 in our answer to the second amended counterclaim. Our answer was filed almost a year before the second appellate order came down, making it crystal clear that there was no dispute as to the 51, 49 percent co-ownership. I'll point the court especially to affirmative defense number four, lack of standing. We pled that the parties, quote, appear to dispute who owns the intellectual property at issue. To the extent plaintiffs are now or later found to lack ownership of some or all of the intellectual property at issue herein, they lack standing to sue these answering defendants. I don't know how more clearly we could have pled it, particularly given the fact that at the time that answer was filed, we had a case where the judgment of the superior court, presumptively correct, had in fact erroneously awarded 100 percent of the intellectual property assets to the estate. The fact that they conceded was incorrect on the second appeal at oral argument. The next point that is raised is that, well, the court somehow allowed us to amend our answer to make that point. Not so. The point was made. We raised it. We argued it. We did so successfully. As to amendment of the second amended complaint, strategic pleadings, particularly those where you by necessity are pleading knowledge of the contributory infringer, alleged contributory infringer, in this case my client, in that circumstance, there simply cannot be a withdrawal or a backing down from the allegation that my client knew what was going on and took the intellectual property, moved the intellectual property with knowledge. If the allegation is anything other than that, the cause fails and it's withdrawal of a strategic pleading. As to the concept that there was other original Federal jurisdiction in this case, absolutely wrong. This is not an original complaint filed in Federal district court. This was a complaint filed by Ms. Pascarellia's company against Ms. Favola and the estate in state court. Federal jurisdiction here was manufactured by the estate when they filed a counterclaim alleging copyright infringement. That was removed to the district court solely on that basis. And because it's a removal case, if copyright fails, so fails the rest of Federal jurisdiction. Judge Lew's order to show cause reluctantly accepted this case. And as far as I know, this was one of the cases of first impression regarding whether the district court had to take a counterclaim alleging copyright and remove that and keep jurisdiction of it. I believe it was one of the first and it's certainly one of the first cases where the Federal jurisdiction then later went on to determine that in fact the copyright claim was bogus. It was a claim between co-owners to dismiss the copyright action and to properly remand the balance back to the state court from whence it came. There's still ongoing litigation in the state court now? There is ongoing litigation, Your Honor. In fact, we have a trial next month commencing in LA Superior Court on all remaining issues as we point out, a remand under those circumstances or a reversal in this case would render very conflicting and very unworkable litigation between two co-equal courts. A number of the parties in this case have been dismissed in the state court, right? There's been a settlement of? As to my clients, Your Honor, that is, we have hopes but it's not been finalized yet. A couple of other points and I'll tender the balance of my time to my co-defendants. Davis v. Blige was mentioned. The only relevance of that case which involved an exclusive license of 100 percent ownership by somebody who might not have even been a co-owner if the allegations of the complaint were given effect is the final footnote in the case which says this holding has nothing to do with oral non-exclusive licenses whereby one co-owner can grant an oral non-exclusive license to someone else. That's the only relevance to this case. This case factually falls squarely within those, within that footnote. I'm not even sure why it was cited. As to attorney's fees, I'll be very brief. We raised the issue and we raised it on behalf of a web developer who lives project to project. He undertook the case believing that there would be a fast exit due to very aggressive litigation by the other side which I think has been capably demonstrated today. He's been forced to file numerous motions, numerous briefs. He's been forced to show up here in the court of appeal on, again, what I think is a case of, if not first impression, certainly one of the first in the country where an improperly removed case based solely on copyright wastes the federal court's time for two years and then has to get sent back. It is an issue of national importance. We raised it. We prevailed on it. We're still arguing it here and we would submit that the purpose of the Copyright Act, Section 505, is amply suited by the very modest award of attorney's fees which were solely awarded for time spent after the second appellate order came down, January of 2015. When you say very modest, what's the amount of very modest? It's $77,000 and change on it. We had requested over $100,000 and Judge Otetto said, well, I'll give it to you for time spent after the second appellate order came down and the Corrales-Pardes motives in pursuing their litigation became, in the words of Judge Otetto, highly suspect. Good morning, Your Honors. May it please this distinguished court, my name is Nina Riley. I am the representative of MuFly, who is the company where the intellectual property now is. As the court is most likely familiar, copyright, the ability to use a copyright or intellectual property occurs when that copyright is actually created. The intellectual property was created by Mr. Souther and by Mr. Corrales, who is no longer with us. The intellectual property was then licensed to my client, who is the wife, former wife now, they're since divorced, of Riley Souther. Because of this implied license, MuFly Production now has the ownership right to use, to exploit that intellectual property and they have been doing so. At this point, the issue of co-ownership that was brought up by our opposing counsel, what they would try to argue is that the California court was absolutely incorrect in awarding a 51-49% ownership right of that intellectual property to Mr. Souther and to the Corrales estate. However, that is exactly what the court did do. As my distinguished co-counsel has already mentioned, that is a court of co-equal dignity to this court. We don't believe it would be proper for that decision to be overturned. After the award, 49-51%, Mr. Souther then licensed the use of that intellectual property to my client to use and exploit in this, it's called lenticular imaging, it's a photo event business, and that is where we are with the issue right now of ownership. The ownership is very, very clear. Are there any questions from the court? Thank you. Thank you very much. You want one minute? Yes, we can give you a minute. Your Honor, my name is Riley Souther, I am a defendant in this case of MuFly Productions versus Fevella, I'm here to argue for the denial of the Corrales appeal. I am here to let you know that in my opinion, the reason this case was moved to district court was simply a case of frivolousness and a fraud. They had absolutely no intention of this case even going for two years. Retainer fees and legal expenses for a small mother and father, mother, mom and pop company like this could run into $50,000 to $100,000, where let alone a retainer fee is $10,000. I believe James Cameron's, the only reason he wanted to do this was to make it easy to push us into bankruptcy and to then pick through the assets. So I don't think the federal district court is a dumping ground for copyright cases that could easily, and he knows that they can be handled in superior court. Had they been handled in superior court, I probably wouldn't be losing my house today. I'd have a few more, a good chance of keeping the business going and it would be healthy. So that's my, in conclusion, I just want to let you know that it's frustrating. This has been going on for 10 years. And I think it's more a billable hours type of thing than really a copyright issue, because they don't really care about the copyrights. Thank you. Thank you. Your opponents say that the state court decision divides at 51-49, do you disagree with that? Yes. What it says is, and the original trial judge said this, and the court of appeal affirms it. The ownership of the stock of the corporation was 51% to the estate, 49% to Mr. Souther. Where this argument is that a shareholder automatically owns the underlying assets of the corporation, it's completely contrary to California law. It's contrary to the law of every state. If that were the case, you'd ignore the corporate veil. You're ignoring corporate form. There's nothing in the court of appeal decision that said that. And with respect, I was the only person in this room other than Mr. Souther who was involved in those appeals. Mr. Walton wasn't counsel at that time. I know what the issue was. It was an election of remedies issue. Constructive trust is a remedy in addition to monetary damages. And the only thing they wanted to make clear was you can't, if you're going to get the property back via property, you can't award compensatory damages, as it was twice affirmed by the court of appeal, for the loss of income. And you can award prejudgment interest, and you can award punitive damages. It is, if you're getting the property back, you can't also get damages for the value of that property. All right? Now, because the estate was a 51% shareholder, it ended up that it could only get in a constructive trust remedy for 151% of the assets. There's nothing in any of those decisions that said Mr. Souther is entitled to anything. It is affirmed that he was a thief. He stole this stuff. If that were not the case, how did we get $2 million in punitive damages, which is affirmed twice? Okay? It's non-logical. It's contrary to California law. A couple of other points very briefly. The appellee's argument completely ignores the language in Rule 12D, which says that if the court is presented with and fails to exclude evidence outside the pleadings, it must convert a 12B6 motion to a motion for summary judgment. That's the first thing that 12D does, which they admit, it's in Judge Otero's footnote, that the court is not entitled to He admits he went outside the record. He had to convert it to Rule 56. And then it says, at that point, the court must consider all relevant evidence. And the court did not. We asked for the opportunity to present rebuttal. We were denied. We asked for the opportunity for cross-examination in the evidentiary hearing. We were denied. And what they're relying on are these May 28, 2015 memoranda supposedly confirming oral licenses that were given three and a half years prior. Conveniently, the day before the original Superior Court judgment came down. Isn't that a coincidence? And there's been no mention of it before, and they've consistently denied until the month before that they own the stuff. They admit it in their opposition to the summary judgment motion. Mr. Souther testified that way. Ms. Pascrella testified to that. If these licenses are valid, then they've committed perjury. It's that basic, all right? That's what we're dealing with. Thank you very much, Your Honors. Thank you. Case just argued will be submitted.
judges: Reinhardt, Tashima, Nguyen